IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

WILLIAM HAMLIN and SANDRA
HAMLIN,

     Plaintiffs,                       CASE NO.:  2018-CA-003315

-vs-

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

     Defendant.

_____/

## COMPLAINT AND JURY TRIAL DEMAND

     Plaintiffs, WILLIAM HAMLIN and SANDRA HAMLIN, by and through the undersigned attorneys and hereby sue the Defendant, LIBERTY MUTUAL FIRE INSURANCE COMPANY, a corporation authorized and doing business in the state of Florida, and alleges as follows:

     1.    This is an action for damages which exceed Fifteen Thousand and 00/100 ($15,000.00) Dollars, exclusive of attorneys' fees, costs and interest.

     2.    Plaintiffs' dwelling, located at 361 Greenfield Road, Winter Haven, Polk County, Florida, sustained sinkhole damage during the policy period.

     3.    A policy of homeowners insurance, including the coverages to protect Plaintiffs against the above losses, was issued by Defendant and was in full force and effect as to Plaintiffs when Plaintiffs' dwelling was damaged.  A copy of the policy is attached hereto as **Exhibit "A."**

4.     Plaintiffs notified Defendant of the damages, and Defendant assigned a claim with a date of loss of December 1, 2016.

5.     Plaintiffs have complied with all conditions precedent to entitle Plaintiffs to recover under the policy.

6.     Defendant denied Plaintiffs' claim.   Defendant's letter denying coverage for Plaintiffs' claim is attached hereto as **Exhibit "B."**

7.     Defendant's denial of Plaintiffs' claim is a breach of contract.

8.     Because of Defendant's denial of Plaintiffs' claim, it has become necessary that Plaintiffs retain the services of the undersigned attorney.   Plaintiffs are obligated to pay a reasonable fee for the attorney's services in bringing this action, plus necessary costs.

WHEREFORE, Plaintiffs demand judgment against Defendant for all covered losses with interest on any overdue payments, attorney's fees and costs pursuant to F.S. Sections 627.428, 626.9373, 57.041, and 92.231, and demand trial by jury.

Dated this 21st day of August, 2018.

*/s/ Sarah K. Hibbard*
Sarah K. Hibbard, Esq.
shibbard@forthepeople.com
mbarnard@forthepeople.com
kpatrick@forthepeople.com
Morgan & Morgan, Tampa,  P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele:  (813) 223-5505
Fax:  (813) 223-5402
Florida Bar #:  037593
Attorney for Plaintiffs

 **Liberty Mutual.**
INSURANCE

Liberty Mutual Insurance
350 E 96th Street
Indianapolis, IN 46240
Telephone: 317-816-3401

June 26, 2018

Tamarie Bradley-Sullivan
PO BOX 515097
Los Angeles, CA 90051

| Insured Name: | William Hamlin |
| | Sandra Hamlin |

| Policy Number: | H3225131249110 |
| Claim Number: | 035592678 |
| Date of Loss: | 12/01/2016 |
| Effective Date: | 11/20/2016 |

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the Liberty Mutual Insurance Group Inc. in the usual and customary course of its business.

Sincerely,

Sabrina Budik
Policy Copy
Support

SB
Enclosures

**Exhibit A**

Liberty Mutual Fire Insurance Company
Boston, Massachusetts
LibertyGuard® Deluxe
Homeowners Policy Declaration



A summary of your homeowners insurance coverage

Thank you for insuring with us. Here is your renewal homeowners policy summary, which is effective as of 11/20/2016.

 ## INSURANCE INFORMATION

**Named Insured**
William Hamlin
Sandra Hamlin
Mailing Address
361 Greenfield Rd
Winter Haven FL 33884-1311

**Policy Number**
H32-251-312491-10

**Policy Period**
11/20/2016-11/20/2017 12:01AM
standard time at the address of the
Named Insured at Insured Location.

Insured Location
Same as Mailing address above

**QUESTIONS ABOUT YOUR POLICY?**
By phone
1-813-264-8890
1-800-308-8496
Liberty Mutual
Office
3550 Buschwood
Park Dr Ste 300
Tampa FL 33618

To report a claim
By phone
1-800-225-2467

Online
LibertyMutual.com/
Claims

| Premium Summary | | |
|---|---|---|
| Standard Policy | $ | 4,702.00 |
| Additional Coverages | $ | 403.00 |
| Other Charges | $ | 2.00 |
| Discounts and Benefits | $ | (1,049.00) |
| Total 12 Month Policy Premium | $ | 4,058.00 |

THIS IS NOT YOUR HOME INSURANCE BILL.

## Coverage Information

**Standard Policy**

| Section I Coverages | | LIMITS | PREMIUM |
|---|---|---|---|
| A. Dwelling | $ | 291,700 | |
| B. Other Structures on Insured Location | $ | 29,170 | |
| C. Personal Property with Replacement Cost | $ | 204,190 | |
| D. Loss of Use of Insured Location | $ | 58,340 | |

| Section II Coverages | | | |
|---|---|---|---|
| E. Personal Liability (each occurrence) | $ | 300,000 | |
| F. Medical Payments to Others (each person) | $ | 1,000 | |

Policy Deductibles

Losses covered under Section I are subject to a deductible of : $500

Losses as a result of Hurricane are subject to a deductible of 2%: $5,834

Losses as a result of Sinkhole are subject to a deductible of 10%: $29,170



## Coverage Information (continued)

Total Standard Policy                                      $      4,702

Standard premium allocated for hurricane losses: $ 1,161
Standard premium allocated for all other losses: $ 3,541

| Additional Coverages | DEDUCTIBLE | LIMITS | | PREMIUM |
|---|---|---|---|---|
| Amendatory Mold End | $ | 10,000/ 20,000 | $ | 0 |
| Credit Card, Fund Transfer, Forgery | $ | 1,000 | $ | 0 |
| Personal Property Replacement Cost | | | $ | 245 |
| Ordinance Or Law 25% | | | $ | 141 |
| Coverage E increased limit | | | $ | 17 |
| Total Additional Coverages | | | $ | 403 |

## Other Charges

| | PREMIUM |
|---|---|
| Florida Emergency Management Surcharge | $    2.00 |
| Florida Building Code Effectiveness Grade Charge | $    0.00 |
| Total Other Charges | $    2.00 |

## Discounts and Benefits

Your discounts and benefits have been applied to your total policy premium.
For more information on discounts, please visit LibertyMutual.com/home-discounts.

| | PREMIUM |
|---|---|
| • Insurance to Value Discount | $    (282) |
| • Inflation Protection Discount | $    (141) |
| • Safe Homeowner Program | $    (447) |
| • Protective Device Discounts: | $    (179) |
|    Smoke/Heat Alarm-All Floors, Extinguishers and Dead Bolt Locks | |
| Total Discounts and Benefits | $  (1,049) |

## Endorsements — Changes to Your Policy

- LibertyGuard® Deluxe Homeowner Policy (HO 00 03 04 91)
- Credit Card, Fund Transfer, Forgery (HO 04 53 04 91)
- Ordinance Or Law (FMHO-1068)
- Amendatory Endorsement (FMHO-2493 5/03)
- Inflation Protection (FMHO-2835 11 03)
- Amendatory Mold End (FMHO 3468 0813)
- Lead Poisoning Exclusion (FMHO-976 05/92)

- Personal Property Replacement Cost (FMHO 2993 0515)
- Protective Devices (HO 04 16 04 91)
- Special Provisions (FMHO 1067 0515)
- No SecII/Limit I-Daycare (HO 04 96 04 91)
- Sinkhole Loss (FMHO 3286 10 11)
- Calendar Year Hurr Ded % (FMHO-1158 R1)
- Seepage Exclusion Endorsement (FMHO 3314 10 11)



## Endorsements — Changes to Your Policy  (continued)

• LMHC Membership  (2340)

## Mortgage Information

Mortgagee 1:
GREEN TREE SERVICING LLC
ISAOA
LOAN NO. 89195914
PO Box 979282
Miami, FL 33197-9282

## Important Messages

LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY ALSO NEED TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.

THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU. PLEASE READ IT CAREFULLY.

This policy contains a separate deductible for sinkhole losses, which may result in high out-of-pocket expenses to you. Please read it carefully.



## Additional Information

In the event of a hurricane and/or sinkhole loss, your Dwelling Coverage (Coverage A) may be automatically increased in accordance with the Inflation Protection endorsement. In these cases, a hurricane and/or sinkhole deductible that is based on a percentage of dwelling coverage would also reflect this increase.

LibertyGuard® Deluxe Homeowners Policy Declarations
Coverage provided and underwritten by Liberty Mutual Fire Insurance Company, Boston MA.

This policy, including endorsements listed above, is countersigned by:

Mark C. Touhey
Secretary

David H. Long
President

Mary Beth Kees
Authorized Representative

**Liberty Mutual®**
INSURANCE

# LibertyGuard Deluxe Homeowners Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States
and Canada.  Please contact your service office shown on your Declarations
Page to report losses, or for any changes or questions about your insurance.
Payments should be sent to the office indicated on your bill.

THIS POLICY IS NON ASSESSABLE



# LIBERTYGUARD DELUXE HOMEOWNERS POLICY
## HO 00 03 EDITION 04 91

**TABLE OF CONTENTS**                    **Page**

Agreement.............................................. 1
Definitions............................................. 1
**SECTION I - PROPERTY COVERAGES**
Coverage A Dwelling........................... 1
Coverage B Other Structures ................ 2
Coverage C Personal Property............... 2-3
Coverage D Loss of Use...................... 3
Additional Coverages........................... 3
Debris Removal................................. 3
Reasonable Repairs........................... 3-4
Trees, Shrubs and Other Plants .......... 4
Fire Department Service Charge.......... 4
Property Removed............................ 4
Credit Card, Fund Transfer Card, Forgery
  and Counterfeit Money................... 4
Loss Assessment ............................. 4-5
Collapse ........................................ 5
Glass or Safety Glazing Material ......... 5
Landlord's Furnishings ...................... 5-6
**SECTION I - PERILS INSURED AGAINST**
Coverage A Dwelling and Coverage B
  Other Structures............................. 6
Coverage C Personal Property............... 6-7
**SECTION I - EXCLUSIONS**
Ordinance or Law................................ 7
Earth Movement ................................. 7-8
Water Damage ................................... 8
Power Failure .................................... 8
Neglect ............................................ 8
War ................................................. 8
Nuclear Hazard .................................. 8
Intentional Loss ................................. 8
Weather Conditions............................. 8
Acts or Decisions................................ 8
Faulty, Inadequate or Defective............. 8
**SECTION I - CONDITIONS**
Insurable Interest and Limit of Liability ... 8
Your Duties After Loss ........................ 8-9
Loss Settlement.................................. 9-10
Loss to a Pair or Set ........................... 10
Glass Replacement ............................. 10
Appraisal ......................................... 10

Other Insurance ................................. 10
Suit Against Us .................................. 10
Our Option ....................................... 10
Loss Payment.................................... 10
Abandonment of Property..................... 10
Mortgage Clause................................ 10
No Benefit To Bailee............................ 10
Nuclear Hazard Clause........................ 10-11
Recovered Property............................ 11
Volcanic Eruption Period...................... 11
**SECTION II - LIABILITY COVERAGES**
Coverage E Personal Liability ................ 11
Coverage F Medical Payments to Others. 11
**SECTION II - EXCLUSIONS**
Coverage E Personal Liability and Coverage F
  Medical Payments to Others ............ 11-13
Coverage E Personal Liability ............... 13
Coverage F Medical Payments to Others. 13
**SECTION II - ADDITIONAL COVERAGES**
Claim Expenses ................................. 13
First Aid Expenses ............................. 14
Damage to Property of Others .............. 14
Loss Assessment................................ 14
**SECTION II - CONDITIONS**
Limit of Liability.................................. 14
Severability of Insurance ..................... 14
Duties After Loss .............................. 14-15
Duties of an Injured Person ................. 15
Payment of Claim .............................. 15
Suit Against Us ................................. 15
Bankruptcy of an Insured .................... 15
Other Insurance ................................. 15
**SECTIONS I AND II - CONDITIONS**
Policy Period .................................... 15
Concealment or Fraud ........................ 15
Liberalization Clause ......................... 15
Waiver or Change of Policy Provisions ... 15
Cancellation ..................................... 15-16
Non-Renewal .................................... 16
Assignment ...................................... 16
Subrogation ..................................... 16
Death.............................................. 16
**\*MUTUAL POLICY CONDITIONS** ............. 16

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



---

## HOMEOWNERS 00 03 04 91

### AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

### DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:
   a. Your relatives; or
   b. Other persons under the age of 21 and in the care of any person named above.
   Under Section II, "insured" also means:
   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";
   d. With respect to any vehicle to which this policy applies:
      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or
      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:
   a. The "residence premises";
   b. The part of other premises, other structures and grounds used by you as a residence and:
      (1) Which is shown in the Declarations; or
      (2) Which is acquired by you during the policy period for your use as a residence;
   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;
   d. Any part of a premises:
      (1) Not owned by an "insured"; and
      (2) Where an "insured" is temporarily residing;
   e. Vacant land, other than farm land, owned by or rented to an "insured";
   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";
   g. Individual or family cemetery plots or burial vaults of an "insured"; or
   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   a. "Bodily injury"; or
   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:
   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or
   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:
   a. The one family dwelling, other structures, and grounds; or
   b. That part of any other building;
   where you reside and which is shown as the "residence premises" in the Declarations.
   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

### SECTION I - PROPERTY COVERAGES

#### COVERAGE A - Dwelling
We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.



**COVERAGE B - Other Structures**

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or
2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

**COVERAGE C - Personal Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world.  At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";
2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater.  Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.**  These limits do not increase the Coverage C limit of liability.  The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.
2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps.  This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.
   This limit includes the cost to research, replace or restore the information from the lost or damaged material.
3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.
4. $1000 on trailers not used with watercraft.
5. $1000 for loss by theft of jewelry, watches,

furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.
7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.  This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.
8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.
9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose.  However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.
10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus.
11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:
    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;
    b. Is away from the "residence premises"; and
    c. Is used at any time or in any manner for any "business" purpose.
    Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus.

**Property Not Covered.**  We do not cover:

1. Articles separately described and specifically insured in this or other insurance;
2. Animals, birds or fish;
3. Motor vehicles or all other motorized land conveyances.
   This includes:
   a. Their equipment and accessories; or
   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances.
   Electronic apparatus includes:
   (1) Accessories or antennas; or



(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus. The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

a. Books of account, drawings or other paper records; or

b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D - Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle

elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

a. Your tree(s) felled by the peril of Windstorm or Hail;

b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage.



If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

a.  Does not increase the limit of liability that applies to the covered property;

b.  Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3.  **Trees, Shrubs and Other Plants.**  We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns.  No more than $500 of this limit will be available for any one tree, shrub or plant.  We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4.  **Fire Department Service Charge.**  We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against.  We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance.  No deductible applies to this coverage.

5.  **Property Removed.**  We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.  This coverage does not change the limit of liability that applies to the property being removed.

6.  **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

a.  The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

b.  Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

c.  Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

d.  Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a.  By a resident of your household;

b.  By a person who has been entrusted with either type of card; or

c.  If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance.  No deductible applies to this coverage.

Defense:

a.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b.  If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c.  We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7.  **Loss Assessment.**  We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises." We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.



Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
   a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;
   b. Hidden decay;
   c. Hidden insect or vermin damage;
   d. Weight of contents, equipment, animals or people;
   e. Weight of rain which collects on a roof; or
   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

   Collapse does not include settling, cracking, shrinking, bulging or expansion.

   This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**
   We cover:
   a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and
   b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

   This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

   Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

   This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

a. **Fire or lightning.**
b. **Windstorm or hail.**
   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.
c. **Explosion.**
d. **Riot or civil commotion.**
e. **Aircraft,** including self-propelled missiles and spacecraft.
f. **Vehicles.**
g. **Smoke,** meaning sudden and accidental damage from smoke.
   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
h. **Vandalism or malicious mischief.**
i. **Falling objects.**
   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a failing object. Damage to the falling object itself is not included.
j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.
k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
   This peril does not include loss:
   (1) To the system or appliance from which the water or steam escaped;
   (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or
   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

   In this peril, a plumbing system does not include a sump, sump pump or related equipment.
l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
   We do not cover loss caused by or resulting from freezing under this peril.



m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.
This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:
(1) Maintain heat in the building; or
(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**
This peril does not include loss to a tube, transistor or similar electronic component.
o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.
The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property.  We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;
2. Caused by:
   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.  This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:
      (1) Maintain heat in the building; or
      (2) Shut off the water supply and drain the system and appliances of water;
   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:
      (1) Fence, pavement, patio or swimming pool;
      (2) Foundation, retaining wall, or bulkhead; or
      (3) Pier, wharf or dock;
   c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;
   d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.  A dwelling being constructed is not considered vacant;
   e. Any of the following:
      (1) Wear and tear, marring, deterioration;
      (2) Inherent vice, latent defect, mechanical breakdown;
      (3) Smog, rust or other corrosion, mold, wet or dry rot;
      (4) Smoke from agricultural smudging or industrial operations;
      (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.
      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed;
      (6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;
      (7) Birds, vermin, rodents, or insects; or
      (8) Animals owned or kept by an "insured."
      If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.  We do not cover loss to the system or appliance from which this water escaped.
3. Excluded under Section I - Exclusions.
Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

### COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. **Fire or lightning.**
2. **Windstorm or hail.**
   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow,



sleet, sand or dust enters through this opening. This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**
4. **Riot or civil commotion.**
5. **Aircraft,** including self-propelled missiles and spacecraft.
6. **Vehicles.**
7. **Smoke,** meaning sudden and accidental damage from smoke.
   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
8. **Vandalism or malicious mischief.**
9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.
   This peril does not include loss caused by theft:
   a. Committed by an "insured";
   b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or
   c. From that part of a "residence premises" rented by an "insured" to other than an "insured."
      This peril does not include loss caused by theft that occurs off the "residence premises" of:
   a. Property while at any other residence owned by, rented to, or occupied by an "insured" except while an "insured" is temporarily living there.   Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;
   b. Watercraft, and their furnishings, equipment and outboard engines or motors; or
   c. Trailers and campers.
10. **Falling objects.**
    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object.   Damage to the falling object itself is not included.
11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.
12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
    This peril does not include loss:
    a. To the system or appliance from which the water or steam escaped;
    b. Caused by or resulting from freezing except as provided in the peril of freezing below; or
    c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."
    In this peril, a plumbing system does not include a sump, sump pump or related equipment.
13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
    We do not cover loss caused by or resulting from freezing under this peril.
14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.
    This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:
    a. Maintain heat in the building; or
    b. Shut off the water supply and drain the system and appliances of water.
15. **Sudden and accidental damage from artificially generated electrical current.**
    This peril does not include loss to a tube, transistor or similar electronic component.
16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

   b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:
      (1) Fire;
      (2) Explosion; or
      (3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;



ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) Water which backs up through sewers or drains or which overflows from a sump; or

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss



which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim



within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:
   a. Repair or replace any part to restore the pair or set to its value before the loss; or
   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
   Each party will:
   a. Pay its own appraiser; and
   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. Reach an agreement with you;
b. There is an entry of a final judgement; or
c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**
The word "mortgagee" includes trustee.
If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.
If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and
   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.
If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.
If we pay the mortgagee for any loss and deny payment to you:
   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**
   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.



b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

**COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

**COVERAGE F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

   c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

      (1) On an occasional basis if used only as a residence;

      (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      (3) In part, as an office, school, studio or private garage;

   d. Arising out of the rendering of or failure to render professional services;

   e. Arising out of a premises:

      (1) Owned by an "insured";

      (2) Rented to an "insured"; or

      (3) Rented to others by an "insured";

      that is not an "insured location";

   f. Arising out of:

      (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";



(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:
(a) Not owned by an "insured"; or
(b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:
(a) Used to service an "insured's" residence;
(b) Designed for assisting the handicapped; or
(c) In dead storage on an "insured location";

g. Arising out of:
(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;
(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or
(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured."  This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:
(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";
(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";
(c) One or more outboard engines or motors with 25 total horsepower or less;

(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";
(e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:
(i) You acquire them prior to the policy period; and
(a) You declare them at policy inception; or
(b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.
(ii) You acquire them during the policy period.
This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:
(a) Less than 26 feet in overall length;
(b) 26 feet or more in overall length, not owned by or rented to an "insured."

(3) That are stored;

h. Arising out of:
(1) The ownership, maintenance, use, loading or unloading of an aircraft;
(2) The entrustment by an "insured" of an aircraft to any person; or
(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:
(1) Undeclared war, civil war, insurrection, rebellion or revolution;
(2) Warlike act by a military force or military personnel; or
(3) Destruction, seizure or use for a military purpose.
Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as



defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employees" employment by an "insured."

2. **Coverage E - Personal Liability,** does not apply to:
   a. Liability:
      (1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;
      (2) Under any contract or agreement. However, this exclusion does not apply to written contracts:
         (a) That directly relate to the ownership, maintenance or use of an "insured location"; or
         (b) Where the liability of others is assumed by the "insured" prior to an "occurrence";
         unless excluded in (1) above or elsewhere in this policy;
   b. "Property damage" to property owned by the "insured";
   c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;
   d. "Bodily injury" to any person eligible to receive any benefits:
      (1) Voluntarily provided; or
      (2) Required to be provided;
      by the "insured" under any:
      (1) Workers' compensation law;
      (2) Non-occupational disability law; or
      (3) Occupational disease law;

   e. "Bodily injury" or "property damage" for which an "insured" under this policy:
      (1) Is also an insured under a nuclear energy liability policy; or
      (2) Would be an insured under that policy but for the exhaustion of its limit of liability.
      A nuclear energy liability policy is one issued by:
      (1) American Nuclear Insurers;
      (2) Mutual Atomic Energy Liability Under-writers;
      (3) Nuclear Insurance Association of Canada;
      or any of their successors; or
   f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F - Medical Payments to Others,** does not apply to "bodily injury":
   a. To a "residence employee" if the "bodily injury":
      (1) Occurs off the "insured location"; and
      (2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";
   b. To any person eligible to receive benefits:
      (1) Voluntarily provided; or
      (2) Required to be provided;
      under any:
      (1) Workers' compensation law;
      (2) Non-occupational disability law; or
      (3) Occupational disease law;
   c. From any:
      (1) Nuclear reaction;
      (2) Nuclear radiation; or
      (3) Radioactive contamination;
      all whether controlled or uncontrolled or however caused; or
      (4) Any consequence of any of these; or
   d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:
   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;
   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and
   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.



2. **First Aid Expenses.**  We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy.  We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.**  We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."
   We will not pay for "property damage":
   a. To the extent of any amount recoverable under Section I of this policy;
   b. Caused intentionally by an "insured" who is 13 years of age or older;
   c. To property owned by an "insured";
   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or
   e. Arising out of:
   (1) A "business" engaged in by an "insured";
   (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or
   (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.
      This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.**  We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
   (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and
   (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, under SECTIONS I AND II - CONDITIONS.

## SECTION II - CONDITIONS

1. **Limit of Liability.**  Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations.  This limit is the same regardless of the number of "insureds", claims made or persons injured.  All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.**  This insurance applies separately to each "insured."  This

condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.**  In case of an accident or "occurrence," the "insured" will perform the following duties that apply.  You will help us by seeing that these duties are performed:
   a. Give written notice to us or our agent as soon as is practical, which sets forth:
   (1) The identity of the policy and "insured";
   (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and
   (3) Names and addresses of any claimants and witnesses;
   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";



c. At our request, help us:
(1) To make settlement;
(2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";
(3) With the conduct of suits and attend hearings and trials; and
(4) To secure and give evidence and obtain the attendance of witnesses;
d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;
e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."
**4. Duties of an Injured Person - Coverage F - Medical Payments to Others.**
The injured person or someone acting for the injured person will:
a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.
The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.
**5. Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.
**6. Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.
No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.
**7. Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.
**8. Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II - CONDITIONS

**1. Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.
**2. Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:
a. Intentionally concealed or misrepresented any material fact or circumstance;
b. Engaged in fraudulent conduct; or
c. Made false statements;
relating to this insurance.
**3. Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.
This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.
**4. Waiver or Change of Policy Provisions.**
A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**5. Cancellation.**
a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.
b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.
(1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.
(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.
(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:
(a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or



(b) If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

---

### *MUTUAL POLICY CONDITIONS

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class II.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

**SECRETARY**

**PRESIDENT**

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc., 1990

## PERSONAL PROPERTY REPLACEMENT COST ENDORSEMENT
## FLORIDA FORM HO 00 03 and HO 00 06 ONLY

**THIS ENDORSEMENT CHANGES TO YOUR POLICY - PLEASE READ IT CAREFULLY**

## SECTION I

For added premium, subsection a. of Condition 3 Loss Settlement is replaced as follows:

a. **At replacement cost without deduction for depreciation:**

   (1) Personal Property;

   (2) Carpeting and household appliances whether or not attached to buildings;

   (3) Awnings, outdoor antennas and outdoor equipment, whether or not attached to buildings

b. **At actual cash value at the time of loss:**

   (1) Structures that are not buildings

The Replacement Cost of any item of Personal Property is limited to the amount it would cost to replace it with a similar item of Personal Property of like kind and quality.

**THIS ENDORSEMENT SHALL NOT APPLY TO:**

1. Fine Arts and like items which, by their inherent nature, can't be replaced with new items.

2. Articles whose age or history contribute to their value including, but not limited to, Souvenirs and Collector's Items.

3. Property that is obsolete or unusable for the purpose for which it was originally intended due to age or historic condition.

**THIS COMPANY'S LIMIT OF LIABILITY FOR LOSS UNDER THIS ENDORSEMENT SHALL NOT EXCEED THE SMALLEST OF THE FOLLOWING AMOUNTS:**

1. Replacement Cost at the time of the loss;

2. The full cost of repair;

3. Any special limit of liability described in the policy; or

4. The Coverage C limit of liability stated in the declarations.

When insured for replacement cost, we will make payment whether or not actual repair or replacement is complete.

All other provisions of this policy apply

**HOMEOWNERS**
**HO 04 53 04 91**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE
**Increased Limit**

For an additional premium, the limit of liability for Additional Coverage **6.**, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money, is increased to $ _____*.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

**HO 04 53 04 91**              Copyright, Insurance Services Office, Inc.,  1990              **Page 1 of 1**



## PREMISES ALARM OR
## FIRE PROTECTION SYSTEM

HO 04 16 04 91

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises." You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

HO 04 16 04 91      Copyright, Insurance Services Office, Inc., 1990      Page 1 of 1

FMHO 1068
HOMEOWNERS
(HO 04 77 06 94)

POLICY NUMBER:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ORDINANCE OR LAW - INCREASED AMOUNT OF COVERAGE FLORIDA

For the premium charged, the percentage applied to the Coverage A limit of liability under Additional Coverage **11.** Ordnance or Law, is increased from 25% to the percentage shown below.

New Total Percentage          %*

* Entry may be left blank if shown elsewhere in the policy for this coverage.

All other provisions of this policy apply.

Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

HO 1067 05 15
(HOMEOWNERS)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## SPECIAL PROVISIONS - FLORIDA

### SECTION I - PROPERTY COVERAGES

In form **HO 00 03** and **HO 00 06** under **Coverage A - Dwelling and Coverage B - Other Structures**

The following is added:

**Special Limits of Liability**

**Cosmetic and Aesthetic Damage to Floors**

The total limit of liability for Coverages **A** and **B** combined is $10,000 per policy term for cosmetic and aesthetic damage to floors.

1. Cosmetic or aesthetic damage includes, but is not limited to: chips, scratches, dents or any other damage to less than 5% of the total floor surface area and does not prevent typical use of the floor.

2. This limit includes the cost of tearing out and replacing any part of the building necessary to repair the damaged flooring.

3. This limit does not increase the **Coverage A** or **Coverage B** limits of liability shown on the Declarations page.

4. This limit does not apply to cosmetic or aesthetic floor damage caused by a Peril Insured Against as named and described for **Coverage C - Personal Property**.

### COVERAGE C - Personal Property

**Special Limits of Liability**

Items **10.** and **11.** are deleted and replaced by the following:

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power.  Electronic apparatus includes:

   **a.** Accessories and antennas; or

   **b.** Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item **10**.

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

   **a.** Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

   **b.** Is away from the "residence premises"; and

   **c.** Is used at any time or in any manner for any "business" purpose.

   Electronic apparatus includes:

   **a.** Accessories and antennas; or

   **b.** Tapes, wires, records, discs or other media;

   for use with any electronic apparatus described in this item **11**.

**Property Not Covered**

Item **3.b.** is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances.  This includes:

   **b.** Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of "motor vehicles" or all other motorized land conveyances.

   Electronic apparatus includes:

   **(1)** Accessories and antennas; or

   **(2)** Tapes, wires, records, discs or other media;

   for use with any electronic apparatus described in this item **3.b.**

Includes Copyrighted Material with
Permission of Insurance Services Office, Inc.

The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

**a.** Used to service an insured's residence; or

**b.** Designed for assisting the handicapped;

## COVERAGE D - Loss of Use

Item **1.** in form **HO 00 02** and **HO 00 03** is deleted and replaced by the following:

**1.** If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

Item **1.** in form **HO 00 04** and **HO 00 06** is deleted and replaced by the following:

**1.** If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

## SECTION I - ADDITIONAL COVERAGES

Item **7.** in form **HO 00 06** is deleted and replaced by the following:

**7. Loss Assessment.** We will pay up to $2000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under **Coverage A - Dwelling,** other than earthquake or land shock waves or tremors before, during, or after a volcanic eruption. A $250 deductible shall apply, unless another deductible was or will be applied to other property loss that resulted from the same property loss being assessed. In that case no deductible for loss assessment will be applied.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $2,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. Regardless of the number of assessments, the limit of $2,000 is the most we will pay as a result of the same direct loss to property. The maximum amount that will be paid for an assessment for any loss is equal to your unit owner's coverage limit in effect one day before the date of occurrence. Any changes to coverage limits made on or after the day before the date of occurrence are not applicable to such loss.

**Condition 1.** Policy Period, under SECTIONS I and II CONDITIONS, does not apply to this coverage.

**9. Glass or Safety Glazing Material** is deleted and replaced by the following:

**9. Glass or Safety Glazing Material.**

**a.** We cover:

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage, caused directly by Earth Movement, of glass or safety glazing ma

Includes Copyrighted Material with Permission of Insurance Services Office, Inc.

FMHO 1067 05 15

terial which is part of a covered building, storm door or storm window; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in **a.(2)** above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this ADDITIONAL COVERAGE **9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

The following ADDITIONAL COVERAGE is added to Forms **HO 00 02** and **HO 00 03** only. With respect to Form **HO 00 04**, the words covered building used below, refer to property covered under ADDITIONAL COVERAGE **10.** Building Additions and Alterations.

**11. Ordinance or Law.**

**a.** You may use up to the limit of liability included on your policy Declarations as it applies to **Coverage A - Dwelling** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a PERIL INSURED AGAINST;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or

other structure, when that building or other structure must be totally demolished because of damage by a PERIL INSURED AGAINST to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a PERIL INSURED AGAINST.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is ADDITIONAL COVERAGE **10.** in Form **HO 00 06** .)

Includes Copyrighted Material with Permission of Insurance Services Office, Inc.

FMHO 1067 05 15

## SECTION I - PERILS INSURED AGAINST

The following Peril is added (for Forms **HO 00 02, HO 00 03,** and **HO 00 06** ):

## Catastrophic Ground Cover Collapse

**a.** We insure for direct physical loss solely to the "covered dwelling", including the foundation, caused by the peril of "catastrophic ground cover collapse".

"Covered dwelling" means the stand-alone structure, or unit for HO 00 06 forms, covered under Coverage A, that you reside in as your residence, including an attached garage. This definition does not extend to any structures that are attached to the livable square footage of this stand-alone structure, including, but not limited to, patios, walkways, sidewalks, fences, screen enclosures, pavement, decks, porches, lanais, driveways, carports, pools, spas, gazebos, etc., unless the structure is under the same roofline or of the same foundation line and of the same depth as the "covered dwelling". Under no circumstance will it extend beyond the unit for HO 00 06 forms.

"Catastrophic ground cover collapse" is geological activity that results in all of the following:

1. The abrupt collapse of the ground cover;

2. A depression in the ground cover clearly visible to the naked eye;

3. "Structural damage" to the "covered dwelling," including the foundation; and

4. The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

"Structural damage" as defined means the "covered dwelling", that regardless of the date of its construction, has experienced the following:

i. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

ii. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third of the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

iii. Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

iv. Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems," being significantly likely to imminently collapse because of the movement or instability of the

Includes Copyrighted Material with
Permission of Insurance Services Office, Inc.

FMHO 1067 05 15

ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

v. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

"Primary structural member" as used above means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

"Primary structural system" as used above means an assemblage of "primary structural members."

**b.** Contents coverage and additional living expenses apply only if there is a loss resulting from "catastrophic ground cover collapse".

(This is PERIL INSURED AGAINST COVERAGE C - PERSONAL PROPERTY **17.** in Form **HO 00 03** and SECTION I - PERILS INSURED AGAINST **17.** in Forms **HO 00 02** and **HO 00 06** )

## SECTION I - EXCLUSIONS

**1. Ordinance or Law** is deleted and replaced by the following:

**1. Ordinance or Law,** meaning any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion **1.a.** does not apply to the amount of coverage that may be provided for under ADDITIONAL COVERAGES, Glass or Safety Glazing Material or Ordinance or Law;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is exclusion **1.a.** in Form **HO 00 03**.)

**2. Earth Movement** is deleted and replaced by the following:

**2. Earth Movement,** meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; sinkhole; mudflow; earth sinking, rising or shifting; unless direct loss by:

**a.** Fire; or

**b.** Explosion

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft or "Catastrophic Ground Cover Collapse".

(This is exclusion **1.b.** in Form **HO 00 03**.)

**4. Power Failure** is deleted and replaced by the following:

**4. Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a PERIL INSURED AGAINST on the "residence premises", we will pay for the loss or damage caused by that PERIL INSURED AGAINST.

(This is exclusion **1.d.** in Form **HO 00 03**.)

## SECTION I - CONDITIONS

**2. Your Duties After Loss**

Item **2.a.** is deleted and replaced with the following:

Includes Copyrighted Material with Permission of Insurance Services Office, Inc.
FMHO 1067 05 15

**2. a.** You, or your representative, including any public adjuster engaged or acting on your behalf, must give prompt notice to us or our agent.

Any claims, including, but not limited to, initial, supplemental, and reopened claims, under an insurance policy that provides coverage for windstorm or hurricane damage, are barred unless notice of the claim was given to us in accordance with the terms of the policy within 3 years after the hurricane first made landfall or the windstorm caused the covered damage, or within 5 years from the date of loss for losses other than hurricanes, windstorms or sinkholes.

For purposes of this section, the terms "supplemental claim" or "reopened claim" means any additional claim for recovery from us for losses from the same loss which we had previously adjusted pursuant to the initial claim.

Items f. (4) and (5) are added:

**(4)** You and your representative, including any public adjuster engaged or acting on your behalf, must submit to recorded statements and examinations under oath as often as we reasonably require, within 60 days of the date of our request to do so. Your statements and examinations under oath will be conducted while not in the presence of any other insured or representative of an insured, including a public adjuster. The statements and examinations under oath of your representative, including a public adjuster, will be conducted while not in the presence of any insured. All recorded statements and examinations under oath must be signed by the person providing the statement or the person being examined. The person providing the statement or being examined must also provide us with records and documents that we request and permit us to make copies.

**(5)** The attorney representing the insured may always be present under the circumstances described in this condition.

Item **h.** is added:

**h.** Your representative, including any public adjuster engaged or acting on your behalf, may not act or fail to reasonably act in any manner that obstructs or prevents us or our adjuster from conducting an inspection of any part of the insured property for which there is a claim for loss or damage in a timely manner.

**3. Loss Settlement.**

Under Forms **HO 00 02** and **HO 00 03**, item **b. (4)** and **(5)** are deleted and replaced with the following:

**b.(4)** We will initially pay at least the actual cash value of the insured loss, less any applicable deductible. We shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred. We will not require you to advance payment for such repairs or expenses, with the exception of incidental expenses to mitigate further damage. If a total loss of the covered dwelling occurs, we shall pay the replacement cost coverage without reservation or holdback of any depreciation in value, subject to the policy limits.

Under Form **HO 00 06**, items **b. (1)** and **(2)** are deleted and replaced by the following:

**b. Coverage A - Dwelling**

**(1)** At the actual cost to repair or replace;

**(2)** We will initially pay at least the actual cash value of the insured loss, less any applicable deductible. We shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred. We will not require you to advance payment for such repairs or expenses, with the exception of incidental expenses to mitigate further damage. If a total loss of the covered dwelling occurs, we shall pay the

Includes Copyrighted Material with Permission of Insurance Services Office, Inc.

replacement cost coverage without reservation or holdback of any depreciation in value, subject to the policy limits.

6. **Appraisal** is deleted and replaced by the following:

6. **Mediation.** If you and we are engaged in a dispute regarding a claim, either may:

   a. Demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and, you have not rescinded the settlement within 3 business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

   We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

   Mediation will not apply to any claim in which we have a reasonable basis to suspect fraud; or where based on agreed-upon facts as to the cause of the loss, there is no coverage under this policy.

7. **Other Insurance** In form **HO 00 06** is deleted and replaced by the following:

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance covering the same property, this insurance will be excess over the amount recoverable under such other insurance.
However, if a loss covered by this policy is covered by other insurance covering the same property and such other insurance is excess insurance over the amount recoverable under any other policy covering the same property, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of such insurance covering the loss.

8. **Suit Against Us** is deleted and replaced by the following:

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within 5 years after the date of loss.

9. **Our Option** does not apply to personal property.

10. **Loss Payment** is deleted and replaced by the following:

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable upon the earliest of:

    a. 20 days after we receive your proof of loss and reach written agreement with you; or

    b. 60 days after we receive your proof of loss and:

       (1) There is an entry of a final judgment; or

       (2) There is a filing of a mediation settlement with us.

    c. Within 90 days after we receive notice of an initial, reopened or supplemental property insurance claim from you, we shall pay or deny such claim unless failing to pay such claim is caused by factors beyond the control of us which reasonably prevent such payment.

## SECTION II - EXCLUSIONS

Under **1. Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others**, items **a.** and **l.** are deleted and replaced by the following:

   a. Which is expected or intended by one or more insureds;

   l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person

Includes Copyrighted Material with Permission of Insurance Services Office, Inc.

of a Controlled Substance(s) as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

(This is exclusion **l.m.** in HO 24 73 .)

## SECTIONS I AND II - CONDITIONS

2. **Concealment or Fraud** is deleted and replaced by the following:

2. **Concealment or Fraud.**

a. Under SECTION **I** - PROPERTY COVERAGES, with respect to all insureds covered under this policy, we may not provide coverage for loss under SECTION **I** - PROPERTY COVERAGES if, whether before or after a loss, one or more insureds have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made material false statements; relating to this insurance.

b. Under Section **II** - LIABILITY COVERAGES, we may not provide coverage to one or more insureds who, whether before or after a loss, have:

(1) Intentionally concealed or mis-represented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made material false statements; relating to this insurance.

However, we will not deny a claim based on credit information available in public records,whether disclosed or undisclosed, if the policy has been in effect for more than ninety (90) days.

5. **Cancellation.** Paragraph **e.** is added. Paragraphs **b., c.,** and **d.** are deleted and replaced by the following:

b. When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

c. We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect. We will reinstate your policy provided that cancellation for nonpayment of premium occurs due to a lender's failure to pay the policy premium.

(2) When this policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

(a) On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

(b) On the sole basis of filing a single claim resulting from water damage unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

(c) Based on the lawful use, possession, or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

Except as provided in item **5.b.** and **5.c.(1)** above, we will let you know of our action at least 20 days before the date cancellation takes effect.

However, for cancellations where your residential structure has been insured by us or an affiliated insurer for at least a 5 year period

Includes Copyrighted Material with Permission of Insurance Services Office, Inc.

immediately prior to the date the cancellation takes effect, we will send notice at least 120 days prior to the date the cancellation takes effect. Such 120 day notice does not apply when the cancellation is due to nonpayment of premium.

**(3)** When this policy has been in effect for more than 90 days, we may cancel:

**(a)** If there has been a material mis-statement;

**(b)** If the risk has changed substantially since the policy was issued;

**(c)** In the event of failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;

**(d)** If the cancellation is for all insureds under policies of this type for a given class of insureds;

**(e)** On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(f)** On the sole basis of filing a single claim resulting from water damage unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

This can be done by letting you know at least 100 days before the date cancellation takes effect. For cancellations effective between June 1 and November 30 such notice must be sent the earlier of 100 days prior to the date cancellations take effect or June 1. However, for cancellations where your residential structure has been insured by us or an affiliated insurer for at least a 5 year period immediately prior to the date the cancellation takes effect, we will send notice at least 120 days prior to the date the cancellation takes effect.

If more than one notice requirement applies, we will provide the broadest notice.

However, such 120 day notice does not apply when the cancellation is due to nonpayment of premium. Proof of mailing will be sufficient proof of notice.

**d.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**e.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within 15 working days after the date cancellation takes effect.

An insurer that cancels a property insurance policy on property secured by a mortgage due to the failure of the lender to timely pay the premium when due shall reinstate the policy as required by Section 501.137, Florida Statutes.

**6. Nonrenewal** is deleted and replaced by the following:

**6. Nonrenewal.** We may elect not to renew this policy. However, we will not nonrenew this policy:

**a.** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**b.** On the basis of filing a single claim resulting from water damage unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**c.** Based on the lawful use, possession, or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

**d.** On the basis of filing of claims for loss caused by sinkhole damage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk

Includes Copyrighted Material with Permission of Insurance Services Office, Inc.

associated with the occurrence of such a claim. However, we may elect not to renew this policy if:

(1) The total of such property claim payments equal or exceed the policy limits of coverage in effect on the date of loss for "property damage" to the covered building, as set forth on the declarations page; or

(2) You have failed to repair the structure in accordance with the engineering recommendations of the professional engineer retained by us upon which any loss payment or policy proceeds were based.

We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal, at least 100 days before the expiration date of this policy. For nonrenewals effective between June 1 and November 30 such notice must be sent the earlier of 100 days prior to the date nonrenewals take effect or June 1. However, for nonrenewals where your residential structure has been insured by us or an affiliated insurer for at least a 5 year period immediately prior to the date nonrenewals take effect, we will send notice at least 120 days prior to the date nonrenewals take effect. Proof of mailing will be sufficient proof of notice.

**8. Subrogation.** The following sentence is added to the first paragraph of this condition for **HO 00 06** policies only:

However, we waive any rights of recovery against the corporation or association of property owners of the condominium where the "residence premises" is located.

The following conditions are added:

**10. Notice.** A company employee adjuster, independent adjuster, attorney, investigator, or other persons acting on behalf of us that need access to an "insured" or claimant or to the insured property that is the subject of a claim must provide at least forty eight (48) hours notice to the "insured" or claimant, public adjuster, or legal representative before scheduling a meeting with the claimant or an onsite inspection of the insured property.

The "insured" or claimant may deny access to the property if notice is not provided. The "insured" or claimant may waive the forty eight (48) hour notice.

**11. Renewal Notification.** If we elect to renew this policy, we will let you know, in writing:

**a.** Of our decision to renew this policy; and

**b.** The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

All other provisions of this policy apply.

Includes Copyrighted Material with Permission of Insurance Services Office, Inc.
FMHO 1067 05 15



# AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY**

*THIS ENDORSEMENT SUPERSEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - Dwelling
Item 1. is amended as follows:
We cover:
1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling, and attached wall-to-wall carpeting;

### COVERAGE C - Personal Property

The introductory paragraph of **Special Limits of Liability** is amended to read:

These do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply.

The following limits are added:
12. $5000 on electronic data processing system equipment and the recording or storage media or accessories used with that equipment.

13. $5000 on any one article and $10000 in the aggregate for loss by theft of any rug, carpet (excluding attached wall-to-wall carpet), tapestry, wall-hanging or other similar article.

14. $2500 in the aggregate for loss of any of the following whether or not they are part of a collection: trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, sports and entertainment memorabilia, toys, games, militaria, and books.

15. $1200 for any one electrical appliance for loss by sudden and accidental damage from artificially generated electrical currents. This special limit does not apply to electronic data processing equipment or storage media.

**Property Not Covered** under **COVERAGE C - Personal Property**

The final two subparagraphs of Item 3 (a. and b.) are replaced by the following:

We do cover vehicles or conveyances not subject to motor vehicle registration which are:
   a. Used solely to service an "insured's" residence; or
   b. Designed for assisting the handicapped;

Item 10. is added as personal property items not covered.
10. Water or steam

**ADDITIONAL COVERAGES** is revised as follows:

Item 7. **Loss Assessment** is deleted in its entirety.

The following is added to Item 8. **Collapse**.
   With respect to this Additional Coverage:
   (1) Collapse means the sudden and entire falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied or used for its current intended purpose.
   (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.
   (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.
   (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

Item 10. **Landlord's Furnishings** is deleted in its entirety.

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING and COVERAGE

Liberty Mutual Insurance Group



**B - OTHER STRUCTURES**
The following is added to item **2.b.**
   (4) Footing(s)

The following are added to item **2.e.** Any of the following:
   (10) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
The final paragraph of Item 2. is further revised as follows:
If any of these cause sudden and accidental water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

**SECTION II - EXCLUSIONS**

Item **1.a.** under **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** is amended as follows:

Which is expected or intended by the "insured", even if the resulting "bodily injury" or "property damage"
   (1) is of a different kind, quality, or degree than initially expected or intended; or
   (2) is sustained by a different person, entity, real or personal property, than initially expected or intended.
However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**SECTION II - ADDITIONAL COVERAGES**
Item **1.c** . under **Claims Expenses** is amended as follows:

Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit.

Item **4. Loss Assessment** is deleted in its entirety.

All other policy terms and conditions apply.



## NO SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
## LIMITED SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE
## BUSINESS HO 04 96 04 91

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II - Exclusions;

2. Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item 8. imposes that limit on "business" property on the "residence premises." (Item 8. corresponds to item 5. in Form HO 00 08.);

4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - item 9. imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item 9. does not apply to adaptable electronic apparatus as described in Special Limit of Liability items 10. and 11. (Items 9., 10. and 11. correspond to items 6., 7. and 8. respectively in Form HO 00 08.)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

 Copyright, Insurance Services Office, Inc., 1990



## INFLATION PROTECTION ENDORSEMENT

It is agreed that the limits of liability for:

> Coverage A, Dwelling;

> Coverage B, Structure;

> Coverage C, Personal Property;

> and Coverage D, Loss of Use,

shall be raised by the rate of increase in the latest available information on residential building cost inflation.

### METHOD

To find the limits of liability on a given date, the Index Level the Company assigns to that date will be divided by the Index Level for the effective date of this Endorsement. This Factor is then multiplied by the limit for Coverages A, B, C and D separately.

If during this policy's term the Coverage A limit is changed at the insured's request, the effective date of this Endorsement is amended to the effective date of such change.

This Endorsement shall not reduce the limits of liability to less than the amount shown on:

> a.   The policy; or

> b.   The most recent Homeowners Policy Renewal Declaration.

This Endorsement must be attached to Change Endorsement when issued after the policy is written.

# "SINKHOLE LOSS" COVERAGE - SECTION 1 PROPERTY

## FMHO 3286 10 11

---

### (FOR USE WITH FORMS HO 00 02, HO 00 03 and HO 00 06)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**DEFINITIONS**

The following definitions are added for purposes of this endorsement only:

1. "Sinkhole loss" means "structural damage" solely to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, including the foundation, arising out of or caused by "sinkhole activity". Contents coverage and additional living expenses apply only if there is "structural damage" to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, caused by "sinkhole activity". The definition for "sinkhole loss" does not include damage to anything other than the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence.

2. "Structural damage" means the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, regardless of the date of its construction, has experienced the following:

   - Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

   - Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third of the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

   - Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

   - Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems," being significantly likely to imminently collapse

because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

- Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

"Primary structural member" as used above means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure. "Primary structural system" as used above means an assemblage of "primary structural members."

3. "Sinkhole activity" means settlement or systematic weakening of the earth supporting the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

4. "Professional engineer" means a person, as defined in Florida statute 471.005, who has a bachelor's degree or higher in engineering. A "professional engineer" must also have experience and expertise in the identification of "sinkhole activity" as well as other potential causes of "structural damage."

5. "Covered dwelling", as used in this endorsement, means the stand-alone structure, or unit for HO 00 06 forms, covered under this policy that you reside in, including an attached garage. This definition does not extend to any structures that are attached to the livable square footage of this stand-alone structure, including, but not limited to, patios, walkways, sidewalks, fences, screen enclosures, pavement, decks, porches, lanais, driveways, carports, pools, spas, gazebos, etc., unless the structure is under the same roofline or foundation line and depth as the "covered dwelling". Under no circumstance will it extend beyond the unit for HO 00 06 forms.

6. "Neutral evaluation" means the alternative dispute resolution provided in Florida statute 627.7074.

7. "Neutral evaluator" means a "professional engineer" or a professional geologist who has completed a course of study in alternative dispute resolution designed or approved by the Department of Financial Services (referred to as department from here on) for use in the "neutral evaluation" process and who is determined by the department to be fair and impartial.

## "SINKHOLE LOSS" COVERAGE

Subject to the coverage and terms of this policy, we insure for direct physical loss to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, that occurs during the policy period and is caused by a "sinkhole loss", including the cost incurred to:

1. Stabilize the land in accordance with the recommendation of Liberty Mutual's selected "professional engineer" and the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence; and,

2. Repair the foundation in accordance with the recommendations of Liberty Mutual's selected "professional engineer" who verifies the presence of a "sinkhole loss" with notice to you, subject to the coverage and terms of the policy.

FMHO 3286 10 11

**Deductible:** This coverage will be subject to a deductible in an amount that is equal to 10% of your policy's **Coverage A** amount shown in the declarations page.

## SECTION I - EXCLUSIONS

With respect to coverage provided by this endorsement:

1. The **Section I - Earth Movement** exclusion does not apply with respect to coverage provided by this endorsement.

## SECTION I - CONDITIONS

2. **Your Duties After Loss**

Item 2.a.(1) is added:

2. a.(1) Any claim, including, but not limited to, initial, supplemental, and reopened claims under an insurance policy that provides sinkhole coverage is barred unless notice of the claim was given to us in accordance with the terms and conditions of the policy within 2 years after you  knew or reasonably should have known about the "sinkhole loss."

3. **Loss Settlement**

With respect to a loss to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, caused by a "sinkhole loss", Item **3.b.(5)** is added:

3.b.(5) Subject to the Deductible provision appearing under the heading "SINKHOLE LOSS" COVERAGE,

(a) We will pay no more than the actual cash value, less the deductible, of the "sinkhole loss," not including underpinning or grouting or any other repair technique performed below the existing foundation of the "covered dwelling," until you enter into a contract for the performance of building stabilization or foundation repairs in accordance with the recommendations set forth in Liberty Mutual's engineer's report issued pursuant to Florida statute 627.7073.

(b) You must enter into a contract for the performance of building stabilization or foundation repairs, in accordance with the recommendation of Liberty Mutual's selected "professional engineer", within 90 days after we confirm coverage for the "sinkhole loss" and notify you of such confirmation. This time period is tolled if either party invokes the "neutral evaluation" process, and begins again 10 days after the conclusion of the "neutral evaluation" process.

(c) After you enter into such contract for the performance of building stabilization and foundation repairs, we will settle the loss as described in this Condition and pay the amounts necessary to begin and perform such repairs as work is performed and as expenses are incurred.

(d) The stabilization and all other repairs to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence,  and contents must be completed within 12 months after entering into the contract for repairs described above unless:

(i) There is mutual agreement between us and you;

(ii) The claim is involved with the "neutral evaluation" process;

(iii) The claim is in litigation; or

(iv) The claim is under "neutral evaluation" or mediation.

**(e)** If the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, suffers a "sinkhole loss," you must repair such damage or loss in accordance with Liberty Mutual's "professional engineer's" recommended repairs.  However, if the repairs have begun and the "professional engineer" selected or approved by Liberty Mutual determines that the recommended repairs cannot be completed within the policy limits, we will either:

   **(i)** Pay to complete the repairs recommended by Liberty Mutual's "professional engineer"; or

   **(ii)** Tender the Coverage A policy limits to the policyholder without a reduction for the repair expenses incurred.

**(f)** You may not accept a rebate from any person performing the required repairs.  If you receive a rebate, coverage is void and you must refund the amount of the rebate to us.

**(g)** As a pre-condition to accepting payment for a "sinkhole loss," you must file a copy of any sinkhole report regarding the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, which was prepared on your behalf or request, with the county clerk of court. You shall bear the cost of filing and recording the report.

**(h)** If we determine there is no "sinkhole loss" without performing testing, you may demand testing in writing within 60 days after your receipt of our claim denial.  You will be required to pay the lesser of 50% of the actual costs of the analyses and services provided under Florida statutes 627.7072 and 627.7073 or $2,500.  We will reimburse you for the entire cost of these tests if we obtain written certification that there is a "sinkhole loss."

**(i)** If we obtain, pursuant to Florida statutes 627.7073, written certification that there is no "sinkhole loss" or that the cause of the damage was not "sinkhole activity", and if you submitted the sinkhole claim without good faith grounds for submitting such claim, you shall reimburse us for 50 percent of the actual costs of the analyses and services provided under Florida statutes 627.7072 and 627.7073; however, you are not required to reimburse us more than $2,500 with respect to any claim. You are required to pay reimbursement under this subsection only if you requested the analysis and services provided under Florida statutes 627.7072 and 627.7073 and we, before ordering the analysis under Florida statute 627.7072, inform you in writing of your potential liability for reimbursement and give you the opportunity to withdraw the claim.

**6. Appraisal** is deleted and replaced by the following:

**6. Neutral Evaluation.**  For sinkhole claims "neutral evaluation" takes the place of any previous Mediation conditions in Section I - Conditions 6a. "Neutral evaluation" is available to either party if a sinkhole report has been issued pursuant to Florida statute 627.7073.

Following the receipt of the sinkhole report or the denial of a claim for a "sinkhole loss," we shall notify you of your right to participate in the "neutral evaluation" program.  We shall provide to you the consumer information pamphlet prepared by the department as defined in Florida statutes.

**a.**  "Neutral evaluation" is nonbinding, but mandatory if requested by either party. A request for "neutral evaluation" may be filed with the department by you or us on a form approved by the department. The request for "neutral evaluation" must state the reason for the request and must include an explanation of all the issues in dispute at the time of the request.  Filing a request for "neutral evaluation" tolls the applicable time requirements for filing suit for 60 days following the conclusion of the "neutral evaluation" process or 5 years, whichever is later.

**b.**  At a minimum, "neutral evaluation" must determine:

**(1)** Causation;

**(2)** All methods of stabilization and repair both above and below ground;

**(3)** The costs for stabilization and all repairs; and

**(4)** The information necessary to carry out **6f**.

**c.**  "Neutral evaluation" shall be conducted as an informal process in which formal rules of evidence and procedure need not be observed. A party to "neutral evaluation" is not required to attend "neutral evaluation" if a representative of the party attends and has the authority to make a binding decision on behalf of the party. All parties shall participate in the evaluation in good faith. The "neutral evaluator" must be allowed reasonable access to the interior and exterior of insured structures to be evaluated or for which a claim has been made. Any reports initiated by the policyholder, or an agent of the policyholder, confirming a "sinkhole loss" or disputing another sinkhole report regarding insured structures must be provided to the "neutral evaluator" before the evaluator's physical inspection of the insured property.

**d.**  We shall pay reasonable costs associated with the "neutral evaluation". However, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the "neutral evaluation", that party must bear such costs.

**e.**  Upon receipt of a request for "neutral evaluation", the department shall provide the parties a list of certified "neutral evaluators". The department shall allow the parties to submit requests to disqualify evaluators on the list for cause.

**(1)** The department shall disqualify "neutral evaluators" for cause based only on any of the following grounds:

**(a)** A familial relationship exists between the "neutral evaluator" and either party or a representative of either party within the third degree.

**(b)** The proposed "neutral evaluator" has, in a professional capacity, previously represented either party or a representative of either party, in the same or a substantially related matter.

**(c)** The proposed "neutral evaluator" has, in a professional capacity, represented another person in the same or a substantially related matter and that person's interests are materially adverse to the interests of the parties. The term substantially related matter means participation by the "neutral evaluator" on the same claim, property, or adjacent property.

**(d)** The proposed "neutral evaluator" has, within the preceding 5 years, worked as an employer or employee of any party to the case.

**(2)**   The parties shall appoint a "neutral evaluator" from the department list and promptly inform the department.  If the parties cannot agree to a "neutral evaluator" within 14 business days, the department shall appoint a "neutral evaluator" from the list of certified "neutral evaluators." The department shall allow each party to disqualify two "neutral evaluators" without cause.  Upon selection or appointment, the department shall promptly refer the request to the "neutral evaluator."

**(3)**   Within 14 business days after the referral, the "neutral evaluator" shall notify you and us of the date, time, and place of the "neutral evaluation" conference.  The conference may be held by telephone, if feasible and desirable.  The "neutral evaluator" shall make reasonable efforts to hold the conference within 90 days after the receipt of the request by the department.  Failure of the "neutral evaluator" to hold the conference within 90 days does not invalidate either party's right to "neutral evaluation" or to a "neutral evaluation" conference held outside this timeframe.

**f.**   At the conclusion of the "neutral evaluation", the "neutral evaluator" shall prepare a report describing all matters that are the subject of the "neutral evaluation", including whether, in his or her opinion, the "sinkhole loss" has been verified or eliminated within a reasonable degree of professional probability and, if verified, whether the "sinkhole activity" caused "structural damage" to the covered building, and if so, the need for and estimated costs of stabilizing the land and any  covered buildings and other appropriate remediation or necessary building structural repairs due to the "sinkhole loss." The evaluator's report shall be sent to all parties and to the department, within 14 days after completing the "neutral evaluation" conference.

**g.**   The recommendation of the "neutral evaluator" is not binding on any party, and the parties retain access to the court. The "neutral evaluator's" written recommendation, oral testimony, and full report shall be admitted in any action, litigation, or proceeding relating to the claim or to the cause of action giving rise to the claim.

**h.**   If the "neutral evaluator" verifies the existence of a sinkhole that caused "structural damage" and recommends the need for and estimates costs of stabilizing the land and any covered buildings and other appropriate remediation or building repairs, which exceed the amount that we offered to pay you, we are liable to you for up to $2,500 in attorney's fees for the attorney's participation in the "neutral evaluation" process.  For purposes of this subsection, the term "offer to pay" means a written offer signed by us or our legal representative and delivered to you within 10 days after we receive notice that a request for "neutral evaluation" has been made.

FMHO 3286 10 11

   **i.**   If we timely agree in writing to comply and timely comply with the recommendation of the "neutral evaluator", but you decline to resolve the matter in accordance with the recommendation of the "neutral evaluator" pursuant to this section:

      **(1)**  We are not liable for extracontractual damages related to a claim for a "sinkhole loss" but only as related to the issues determined by the "neutral evaluation" process. This section does not affect or impair claims for extracontractual damages unrelated to the issues determined by the "neutral evaluation" process contained in this section; and

      **(2)**  Our actions are not a confession of judgment or admission of liability, and we are not liable for attorney's fees under Florida statute 627.428 or other provisions of the insurance code unless the policyholder obtains a judgment that is more favorable than the recommendation of the "neutral evaluator."

   **j.**   If we agree to comply with the "neutral evaluator's" report, payments shall be made in accordance with the terms and conditions of the applicable insurance policy pursuant to Florida statute 627.707(5).

**8. Suit Against Us.** The following language is added with respect to sinkhole coverage:

**8. Suit Against Us.** No action can be brought unless the policy provisions have been complied with. Filing a request for "neutral evaluation" tolls the applicable time requirements for filing suit for a period of 60 days following the conclusion of the "neutral evaluation" process or 5 years, whichever is later.

## SECTION I AND 2 - CONDITIONS

### 6. Nonrenewal

With respect to a loss to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, caused by a "sinkhole loss", Item **6.c.** is added:

   **6.c.**  We will not nonrenew any policy on the basis of filing of claims for sinkhole loss if the total of such payments does not equal or exceed the policy limits of coverage for the policy in effect on the date of loss, for property damage to the "covered dwelling" on the "residence premises" under **Coverage A**, as defined under the Definitions of the homeowners policy, that you reside in as your residence, or if the policyholder repaired the structure in accordance with Liberty Mutual's engineer's recommendations upon which any payment or policy proceeds were based. If we pay such limits, we may nonrenew the policy.

All other provisions of your policy apply.

                  **FMHO 3286 10 11**



# AMENDATORY MOLD, FUNGUS, WET ROT, DRY ROT, BACTERIA, OR VIRUS ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**DEFINITIONS**

The following definition is added to the DEFINITIONS section:

9.   **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** means any type or form of fungus, rot, virus or bacteria.  This includes mold, mildew and any mycotoxins (meaning a toxin produced by a fungus), other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or viruses.

**SECTION I – PROPERTY COVERAGES**

**Additional Coverages**

The following Additional Coverage is added:

**12. Remediation of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" Resulting Directly From Any Covered Loss**

We will pay, up to the Basic Policy Limits or Option shown in the Declarations, for the **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss.

**"Remediation"** means the reasonable and necessary treatment, containment, decontamination, removal or disposal of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** as required to complete the repair or replacement of property, covered under Section I of the policy, that is damaged by any covered peril insured against, and also consists of the following:

1. The reasonable costs or expense to remove, repair, restore, and replace that property including the costs to tear out and replace any part of the building as needed to gain access to the **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**; and

2. the reasonable costs or expense for the testing or investigation necessary to detect, evaluate or measure **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**; and

3. any loss of fair rental value, or reasonable increase in additional living expenses, that is necessary to maintain your normal standard of living, if **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss makes your residence premises uninhabitable.

We will pay no more than the Basic Policy Limits or Option shown in the Declarations for the **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from any covered loss during the policy period, regardless of the number of locations under the policy to which this endorsement is attached, the number of persons whose property is damaged, the number of "insureds," or the number of losses or claims made.

If there is a covered loss or damage to covered property, not caused, in whole or in part, by **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus,"** loss payment will not be limited by the terms of this Additional Coverage, except to the extent that **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** causes an increase in the loss.  Any such increase in the loss will be subject to the terms of this Additional Coverage.



This limitation does not apply to **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** ensuing from a covered fire or lightning loss.

This Additional Coverage does not increase the limits of liability under Section I of the policy as shown in the Declarations.

## SECTION I – EXCLUSIONS

Exclusion **1.i.** is added:

 i. Except as provided by **Additional Coverage 12.**, loss consisting of or caused by **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** is excluded, even if resulting from a peril insured against under Section I.  We do not cover **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus,"** even if resulting from a peril insured against under Section I, except as provided by **Additional Coverage 12.**

This exclusion does not apply to **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** ensuing from a covered fire or lightning loss.

## SECTION II (LIABILITY COVERAGES) – CONDITIONS

Condition **1. Limit of Liability** is deleted and replaced by the following:

 1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage Limit shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the alleged or threatened inhalation of, ingestion of contact with exposure to, existence of, or presence of any **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** will not be more than the Coverage E Aggregate Sublimit of Liability for **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** shown in the Declarations.  This is the most we will pay regardless of the:

 a. Number of locations insured under the policy to which this endorsement is attached;

 b. Number of persons injured;

 c. Number of persons whose property is damaged;

 d. Number of "insureds"; or

 e. Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage E limit of liability shown in the Declarations. This sublimit applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** described in **1. Limit of Liability** of this endorsement, Condition **2. Severability of Insurance** is deleted and replaced by the following:

 2. **Severability of Insurance.** This insurance applies separately to each "insured" except with respect to the Coverage E Aggregate Sublimit of Liability described in this endorsement under Section II Conditions **1. Limit of Liability.**  This condition will not increase the limit of liability for this coverage.

**This endorsement takes precedence over all other endorsements attached to your policy.**



### BASIC COVERAGE LIMITS AND OPTIONAL INCREASED LIMITS

| | | | |
|---|---|---|---|
| **Basic Policy Limit:** | **SECTION I** | **Each Covered Loss** | **$10,000** |
| | | **Policy Aggregate** | **$20,000** |
| | **SECTION II** | **Aggregate Sublimit** | **$50,000** |
| **Option A – for a premium charge:** | **SECTION I** | **Each Covered Loss** | **$25,000** |
| | | **Policy Aggregate** | **$50,000** |
| | **SECTION II** | **Aggregate Sublimit** | **$50,000** |
| **Option B – for a premium charge:** | **SECTION I** | **Each Covered Loss** | **$50,000** |
| | | **Policy Aggregate** | **$50,000** |
| | **SECTION II** | **Aggregate Sublimit** | **$50,000** |



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# CALENDAR YEAR HURRICANE DEDUCTIBLE (PERCENTAGE) - FLORIDA
### ALL FORMS EXCEPT HO 00 04
## SCHEDULE*

**Calendar Year Hurricane Deductible Amount _____ % of the Coverage A - Dwelling Limit of Liability**

*Entries may be left blank if shown elsewhere in this policy for this coverage.

### A. Loss by Windstorm During a Hurricane

With respect to paragraphs **C.** and **D.**, coverage for windstorm loss caused by a hurricane which occurs anywhere in the state of Florida, includes loss to:

1. The inside of a building; or

2. The property contained in a building caused by:

   a. Rain;

   b. Snow;

   c. Sleet;

   d. Hail;

   e. Sand; or

   f. Dust;

if the direct force of the windstorm damages the building, causing an opening through which rain, snow, sleet, hail, sand or dust enters and causes damage.

### B. Hurricane Described

1. A hurricane means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service.

2. A hurricane occurrence:

   a. Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service; and

   b. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

### C. Calendar Year Hurricane Deductible Described

A hurricane deductible issued by us or an insurer in the same insurer group:

1. Can be exhausted only once during each calendar year; and

2. Applies to loss on Covered Property caused by one or more hurricanes during each calendar year.

The dollar amount of the calendar year hurricane deductible is determined by multiplying the Coverage **A** limit of liability shown in the Declarations by the percentage amount shown in the Schedule above.

### D. Application of Calendar Year Hurricane Deductible

1. In the event of the first windstorm loss caused by a single hurricane occurrence during a calendar year, we will pay only that part of the total of all loss payable under Section I - Property Coverages that exceeds the calendar year hurricane deductible stated in the Schedule.

2. With respect to a windstorm loss caused by the second, and each subsequent hurricane occurrence during the same calendar year, we will pay only that part of the total of all loss or damage payable under Section I - Property Coverages that exceeds the greater of:

   a. The remaining dollar amount of the calendar year hurricane deductible; or

   b. The deductible that applies to fire that is in effect at the time of the loss.

   The remaining dollar amount of the calendar year hurricane deductible is determined by subtracting all previous windstorm losses caused by hurricanes during the calendar year from the calendar year hurricane deductible.

3. If:

   a. Covered property is insured under more than one policy issued by us or another insurer in the same insurer group; and

   b. Different hurricane deductibles apply to the same property under such policies;

   Then the hurricane deductible applicable under all such policies used to determine the total of all loss payable under Section I - Property Coverages shall be the highest amount stated in any one of the policies.

4. When a renewal policy is issued by us or an insurer in the same insurer group, or we issue a policy that replaces one issued by us or an insurer in the same insurer group, and the renewal or replacement policy takes effect on a date other than January 1st of a calendar year, the following provisions apply:

   a. If the renewal or replacement policy provides a lower hurricane deductible than the prior policy, and you incurred loss from a hurricane under the prior policy in that same calendar year, the lower hurricane deductible will not take effect until January 1st of the following calendar year.

   b. If the renewal or replacement policy provides a lower hurricane deductible than the prior policy, and you have not incurred a hurricane loss in the same calendar year, the lower hurricane deductible will take effect on the effective date of the renewal or replacement policy.

   c. If the renewal or replacement policy provides a higher hurricane deductible than the prior policy, the higher hurricane deductible:

      (1) Will take effect on the effective date of the renewal or replacement policy; and

      (2) Shall be used to calculate the remaining dollar amount of the hurricane deductible described in Paragraph **2.**

5. You must:

   a. Maintain receipts or other records of hurricane losses below the deductible amount;

   So that we may apply the amount of losses below the deductible amount to subsequent claims for windstorm loss caused by hurricanes that occur during the calendar year.

**E. Loss By Windstorm That is Not A Declared Hurricane**

Refer to the policy declarations for the deductible that applies to windstorm loss if the circumstances of the loss described above do not apply.

All other provisions of this policy apply.



# LEAD POISONING EXCLUSION ENDORSEMENT

The following provisions are added to and made part of your Homeowners Policy:

Section I - Property Coverages do not apply to any costs or expenses incurred or loss arising out of:

1. the removal, testing for, monitoring, clean-up, abatement, treatment, or neutralization of lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead, or;

2. any governmental direction or other request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:

1. arising out of lead paint, plaster or putty containing lead; soil or earth containing lead or any other material or substance containing lead, or;

2 any costs or expenses incurred or loss arising out of any claim, governmental direction, or request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

This exclusion applies to any obligation to share damages, costs or expenses with someone else or to repay someone else who must pay damages, costs or expenses.

## SEEPAGE EXCLUSION ENDORSEMENT

**This endorsement changes your policy.  Please read it carefully.**

**SECTION I - PERILS INSURED AGAINST**

**Coverage A - Dwelling and Coverage B - Other Structures**

Paragraph **2.e. (9)** is added:

    **(9)  Seepage**, meaning a gradual, continuous or repeated seepage or leakage, of water, steam or fuel over a period of 14 days or more, resulting in damage to the structure, whether hidden or not.

**This endorsement takes precedence over all other endorsements attached to your policy.**

**FMHO 3314 10 11**



July 14, 2017

William Hamlin
Sandra Hamlin
361 Greenfield Rd
Winter Haven, FL 33884-1311

Claim Number: 035592678-01
Date of Loss:   12/1/2016
Policy Number: H3225131249110

Dear William Hamlin & Sandra Hamlin,

Liberty Mutual Insurance appreciates the opportunity to be of service to you, especially during this time.  Our goal is to provide you with exceptional customer service to ensure we are meeting your specific needs.

As we recently discussed, we have completed our investigation of your homeowner's claim, which revealed cracking throughout the property due to settling and earth movement. Donan Engineering confirmed that the settling and earth movement is not the result of a sinkhole.

After a careful investigation of your claim, we have determined that your policy does not afford coverage for damages resulting from settling and earth movement.

The applicable policy provisions are as follows:

## SECTION I – PERILS INSURED AGAINST

We insure against risk of direct loss to property described in coverage's A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

  e. Any of the following:

    (1)  Wear and tear, marring, deterioration;

    (2)  Inherent vice, latent defect, mechanical breakdown;

    (3)  Smog, rust or other corrosion, mold, wet or dry rot;

    (6)  Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

**CONTACT US**

**By phone**
Tel: (866) 823-9636 x 14876

Fax: (866) 823-9639

**By E-mail**
IASupplements@Libertymutual.com

**Liberty Mutual Fire Insurance Company**
Centralized Catastrophe Unit
PO Box 1053
Montgomeryville, PA 18936-1053
Office: (866) 542-2287
Fax: (866) 791-7490

**Visit us online**
LibertyMutual.com

**About Claims Process**
Libertymutual.com/claims-insurance/about-claims-process

# Exhibit B



**SECTION I – EXCLUSIONS**

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

  b. Earth Movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

    (1)  Fire;

    (2)  Explosion; or

    (3)  Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

       ensues and then we will pay only for the ensuing loss.

Our coverage position is premised upon our investigation, presently known facts and the terms of your policy.  If you have any questions or have other information which might be used to reconsider our coverage decision, please feel free to contact me or my supervisor, Michael J Bradbury , at (866) 823-9636.  If you prefer to communicate by email, my address is listed above.  When contacting me by email, please include your claim number in the subject line.

Sincerely,

Allen Weston
Claims Department

<table>
<tr><td><strong><u>Important Policy and/or State Specific Information</u></strong><br><em>This letter should not be construed as a waiver or estoppel of any of the possible coverage defenses afforded by the policy or applicable law.</em></td></tr>
</table>